SOMMERYILLE, J.
Plaintiff sues the defendant company for additional licenses for the years 1909 to 1912, inclusive, as a wholesale dealer. The evidence shows that defendant paid licenses as a wholesale dealer during the years mentioned, based on its gross annual receipts for each year, excluding the proceeds of the sale of bags manufactured by it, and the proceeds of the sales of imported bales of bagging which were sold in the original and unbroken packages. The state has abandoned its claim for additional licenses on the sale of the imported articles, and it is here insisting upon the reversal of a judgment against it, which holds that the defendant is a manufacturer of bags, and exempt from the payment of license taxes ón sales of-bags manufactured by it under article 229 of the Constitution.
The article referred to provides that the General Assembly may levy a license tax upon those persons, etc.—
“except clerks, laborers, clergymen, school teachers, those engaged in mechanical, agricultural, horticultural, and mining pursuits, and manufacturers, other than those of distilled, alcoholic or malt liquors, tobacco, cigars, and cotton seed oil.”
Plaintiff alleges that the defendant is a wholesale dealer, and contends that it is not a manufacturer; and is not, therefore, exempt under the article of the Constitution.
Mr. Brande defines “manufacture” as a term employed to designate the changes or modifications made by art or industry in the form or substance of material articles with a view of rendering them capable of satisfying some want or desire of man, and “manufacturing industry” to consist in the application of art, science, or labor to bring about certain changes or modifications of already existing materials. He includes under the term “manufacturer” all branches of industry with the exceptions of fishing, hunting, mining, and such industries as have for their object to obtain possession of material products in the state in which they are formed by nature. He says that the term is generally applied only to those departments of industry in which the raw material is fashioned into desirable articles by art or labor without the aid of the soil, but that there is no real good reason for such limitation, and that is obvious from slightest consideration that agriculture is nothing but a manufacture, for the business of agriculturalist is to dispose of the soil, seed, manure, or other materials, that they may supply him with other and more desirable products. Brande’s Enc., tit. “Manufacture.”
The Century Dictionary defines “manufacture” as the operation of making goods or wares of- any kind; the production of articles *400 for use from raw or prepared materials, by giving to tbe materials new forms, quality, or combination, whether by hand, labor, or by machinery; used more especially of production in a large way by machinery, or by many hands working co-operatively.
In the case of State v. American Sugar Refining Co., 108 La. 603,32 South. 965, where the state was claiming a license tax from defendant as a refiner of sugar, under the act which provided for the payment of such license tax, and where the defendant contended it was a manufacturer of sugar, and exempt under the Constitution, we discussed fully the definition of the word “manufacturer,” and we applied the constitutional exemption, and held that defendant was a manufacturer, and exempt from' the license tax claimed by the plaintiff. We there enumerated, at length, different kinds of businesses which had been declared to be manufactories ; but the manufacturer of bags was not among them. We made another enumeration of manufacturers in our opinion in the more recent case of Henderson v. Shreveport Gas, Electric Light & Power Co., 134 La. 39, 63 South. 616.
Tested by the definitions in the text and reference boobs, and by the previous rulings of this court, we are constrained to hold that defendant is a manufacturer of bags.
The evidence shows that defendant is an importer of burlap bagging in bales; that the bales are composed of rolls of burlap, which are taken into a rolling room where the bands are removed; the bolts, of about 100 yards -each, are spread out, and the end of a bolt is sewed to another bolt by machinery, and made into a single strip one thousand to twelve hundred yards long, which strip is put through a rolling machine, where it is'smoothed out and wound into-another roll; it is then cut by a cutting machine, in another department, which cuts the burlap into proper dimension for the bags; the machine cuts and folds the bags ready for sewing, and delivers them on a table; these cut and folded bags are distributed to the sewing machine tables, where they are sewed into bags by power operated machinery; the bags are then transferred to turning machines, where the seams are turned inside, smoothed out, automatically counted by machinery, and delivered on a table ready to be transferred to the baling press; they are then compressed by machinery, bound with rope, and weighed, and from there transferred to the shipping department for shipment. If the bags have to be printed with an analysis or designation of the goods they are to contain, or with the name, address, business, etc., of the purchaser, or with any trademark, or design, they are taken to the press room, where they are printed; they are then , taken to the baling press. The operation of the machinery requires the employment of much human labor, as well as machine work. Defendant owns and occupies a large five-story factory and warehouse in the city of New Orleans, assessed for taxation at $124,-000. It uses about 60 sewing machines, besides the other machinery referred to above. It employs, on an average, about 210 operators in its factory, exclusive of clerical force. The building is used almost entirely for the purpose of bag manufacture and other incidents, and it pays out in wages to its factory labor about $65,000 per year.
Thus, by the investment of large capital, and by means of many machines and much mechanical labor, defendant converts the material which is known as burlap, and imported from Calcutta, into a new and distinct article fit for use and in commercial demand, called bags, which are sold to the trade at wholesale.
We quote and affirm what we hold in the case of State v. Dupré, 42 La. Ann, 561, 7 South. 727, where the state sought to collect a license tax from the defendants for con *402 ducting the business of “editing, printing, publishing and sending a newspaper called the Daily States,” where we say:
“Certainly, from a mechanical point of view, this presents all the essentials of manufacture under every definition of the word.
“It also comes clearly within the reason and motive of the constitutional exemption, which was to encourage enterprises that furnished employment to home labor in the making of things which the people use and require, and which, if not made here, would be bought abroad.”
Counsel for plaintiff sought to apply the principle laid down in certain cases decided by this court wherein was involved the question of property taxation, which is provided for in another article of the Constitution, and which is governed by those articles. Not only are the articles differently numbered, but in some respects they are contrary one to the other. Property taxation must be equal and uniform; and certain property, mentioned in the Constitution, is exempted from taxation; and the rule of construction is that these exemptions are strictly construed. Only certain designated manufacturers are exempted from property taxation. While license taxation is not equal, the General Assembly may levy license taxes, or it may not. If levied, they must be graduated; and all manufacturers are exempted from such taxation, except a very limited number. The rulings on property taxation cannot always be applied to the objects of license taxation.
Plaintiff alleges that, if defendant is held to be a manufacturer, tlie evidence shows that it is also engaged in the business of wholesale dealer, and buys and sells products other than those manufactured by itself, and that it owed licenses as a wholesale dealer based upon its gross receipts or sales; and it invokes the ruling made in Union Oil Co. v. Marrero, 52 La. Ann. 357, 26 South. 766. But plaintiff relieves us from the necessity of reviewing the opinion in that case by its abandonment of its claim for license taxes on goods imported by the defendant company, which were sold in original and unbroken packages, and which are exempt under the Constitution of the United States. This would leave then only two classes to be accounted for: (1) From bags manufactured in New Orleans; and (2) all other sales, averaging about $200,000 a year. With reference to this last item, plaintiff alleges in its petition that defendant has paid licenses therefor. There is therefore left only the proceeds of the sale of bags manufactured in New Orleans. Defendant has not therefore, with reference to the proceeds of the last class of goods mentioned, so mingled its wholesale business with the proceeds of its sales of its manufactory as to permit it to be termed exclusively a wholesale deáler. It is both a manufacturer of bags and a wholesale dealer of bagging, twine, etc.
Judgment affirmed.