In this matter the State of Louisiana, proceeding by rule, seeks to collect from the defendant corporation, an occupational license tax for the years 1935, 1936 and 1937, together with interest and penalties. The defendant resists payment of the tax upon the ground that it is and was a manufacturer during the years for which the tax is sought to be collected and, as such, specifically exempt under the terms of the Constitution of the State of Louisiana, art. 10, § 8, from the payment of tax and upon the further ground and, in the alternative, that if it be not a manufacturer, it is exempt under another clause of the constitution which absolves "all those engaged in mechanical, agricultural or horticultural pursuits" from the payment of the tax.
There was judgment below in favor of the State of Louisiana making the rule absolute and ordering the defendant to pay the sum of $385 for the years 1935, 1936 and 1937, together with interest and attorneys' fees. From this judgment the defendant has appealed.
It is conceded that, if any tax be due, by defendant, the sum awarded by the judgment is correct.
The defendant, being a corporation, cannot claim exemption upon the ground that it is engaged in a mechanical pursuit. This was definitely decided by State v. Up-To-Date Shoe Repairing Company, Inc., 175 La. 917, 144 So. 714, where our Supreme Court said:
"We think that the business operated by defendant is a mechanical pursuit within the meaning of the constitutional exemption. * * * But, we also think that the exemption itself applies to individuals only and not to corporations."
The business conducted by defendant as stated by its secretary and manager, Mr. Hirstius, is that of "hot dip galvanizing" and this is explained to be the preparation of a compound of zinc, antimony, tin and lead which, when applied to metal, prolongs its useful existence "over fifteen, eighteen or twenty years". The defendant compounds the mixture and it charges its customers by the pound for its galvanizing process. That is to say, if a ship's anchor or rudder is to be galvanized, it is weighed and so much per pound charged for processing it.
The definition of a "manufacturer," as given by our Supreme Court in City of New Orleans v. Ernst Co., 1883, 35 La.Ann. 746, is as follows:
"A manufacturer is defined to be: one who is engaged in the business of working raw materials into wares suitable for use, [or] who gives new shapes, new qualities, new combinations to matter which has already gone through some artificial process. A manufacturer prepares the original substance for use in different forms. He makes to sell, and stands between the original producer and the dealer, or first consumers, depending for his profit on the labor which he bestows on the raw material."
There have been many adjudications in our Courts on this subject. City of New Orleans v. Le Blanc Company, 34 Ann. 596, 597; State v. American Biscuit Manufacturing Co., 47 La.Ann. 160, 16 So. 750; State v. A.W. Wilbert's Sons, etc., Co., 51 La.Ann. 1223, 26 So. 106; State v. American Sugar Refining Co.,108 La. 603, 623, 32 So. 965; State v. Tichenor Antiseptic Co.,118 La. 685, 43 So. 277; State v. Bemis Bro. Bag Co., 135 La. 397, 65 So. 554; State Tax Collector *Page 359 
v. Brown, 140 La. 928, 74 So. 253; State v. American Creosote Works, Inc., 163 La. 547, 112 So. 412; State v. Gardner Jacob Company, Inc., 176 La. 221, 145 So. 521.
Defendant confidently relies upon the case of State of Louisiana v. American Creosote Works, supra, wherein it was held that the defendant was a manufacturer within the meaning of the definition given in City of New Orleans v. LeBlanc. In that case the defendant's occupation was described by the Court as follows [163 La. 547, 112 So. 413]:
"The inner bark is peeled off the timber and the knots are smoothed down. It is then cut to the required lengths for piling. Telephone and telegraph poles are made by forming a roof, either slanting or pointed, on the ends of the timber, thus prepared, in which notches are cut to hold the cross-arms, and holes are bored for the insertion of bolts. The rough lumber is cut to size, mortised for splicing and trimmed. The resulting product is used for bridge and highway timber. Rough lumber is also planed and smoothed, cut to size, with holes for bolts, for use as cross-arms for telegraph or telephone poles. Wooden paving blocks are made by special machinery and cut to size as ordered by various municipalities. Cross-ties are adzed to afford an even surface for the plates. The plant also turns out car bumpers, factory flooring, and what is known as `Martinez' sheet piling, a patented article.
"All of these articles before being placed upon the market as finished products are impregnated with creosote oil by an intricate mechanical process. The article to be treated is placed in an immense cylinder into which steam is admitted for the purpose of drawing out the resin, sap and water. The steam is then exhausted from the cylinder and a vacuum is produced which draws out the remaining moisture and dries the article. Then air is pumped in further drying the wood, expanding the cells, and clearing out the resin that may have been left therein. Finally, creosote oil is applied under pressure, taking the place of the resin, sap, and water forced out and filling up the expanded cells of the wood."
In the case before us, however, we fail to see the analogy insisted upon by counsel. The defendant in this case may be said to manufacture the galvanizing compound, but it does not sell the compound. It uses it by applying it to old metal in order to prolong the life of the metal and its revenue is based upon the weight of the old metal which is brought to it for application of the galvanizing compound. We are unable to see in this operation anything resembling in principle that described in the Creosote Company case, or within the definition of a manufacturer given in the LeBlanc case.
Our conclusion is that the defendant is not a manufacturer and, therefore, not exempt from the payment of the occupational license tax; consequently, and for the reasons assigned, the judgment appealed from is affirmed.
Affirmed.