THE PEOPLE OF THE STATE OF NEW YORK ex rel. SCHWARZSCHILD & SULZBERGER COMPANY, Relator, *v.* JAMES A. ROBERTS, as Comptroller of the State of New York, Respondent.

*Taxation — when a corporation is not wholly engaged in manufacturing in this State — foreign transactions within its powers — appraisal.*

A domestic corporation, which slaughtered cattle and manufactured the same into food and other articles, had a large plant in Kansas City and another smaller plant in New York city, where about one-fourth of the slaughtering was done, and where the animals brought from the west were hung up in a refrigerator for five or six days before being sold or made into corned and smoked beef The New York plant also included an oleo factory, a stearine factory and curing establishment and an ice plant.

*Held,* that, as a part of the business of the corporation was the sale of the products of its Kansas plant, which was practically prepared for sale when shipped, it could not be said that it was wholly engaged in manufacturing in New York State;

That, as the Kansas transactions and the sale in the State of New York of the Kansas products were within the powers of the corporation, the corporation was taxable to the extent of the capital employed within the State of New York.

In determining the value of the capital employed in the State of New York the Comptroller is not bound by an appraisal of the stock of the corporation made by the officers of the corporation.

450 PEOPLE ex rel. SCHWARZSCHILD CO. *v.* ROBERTS.

THIRD DEPARTMENT, DECEMBER TERM, 1896. [Vol. 11.

CERTIORARI issued out of the Supreme Court and attested on the 12th day of October, 1895, directed to James A. Roberts, as Comptroller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Albany all and singular his proceedings in assessing a franchise tax against the relator, pursuant to chapter 542 of the Laws of 1880, and the acts amendatory thereof and supplemental thereto.

*Myer Nussbaum,* for the relator.

*T. E. Hancock, Attorney-General,* and *G. D. B. Hasbrouck, Deputy Attorney-General,* for the respondent.

MERWIN, J. :

The relator is a domestic corporation, organized in January, 1893, for the purpose of slaughtering cattle and manufacturing the same into food and other articles. Its authorized capital is $5,000,000, of which about $4,400,000 have been paid in. In conducting its business it has two large plants, consisting of real estate and factories, the larger plant being in Kansas City, in the State of Kansas, and the other in New York city.

The plant here consists of an oleo factory, stearine factory, curing establishment, ice plant and various other machinery connected with the business of a slaughter house. About one-fourth of the slaughtering is done at the New York plant. The animals are brought from the west, taken to the slaughter house and killed by machinery, the carcasses are hung up in a refrigerator in halves, where they remain for five or six days, then are cut up and part sold to the retail butchers and part made into corned and smoked beef. The fat is treated in the factory and made into oleo oil and stearine, and the scraps, blood and entrails made into a fertilizer. The hides and horns are sold.

From the beef produced at the Kansas plant there is brought into this State, and sold at the defendant's sales houses here, beef to the amount, as testified by the president and treasurer of the relator, of about $1,500,000 yearly. This beef is practically completed for the market before being brought here. It is placed here in the ice house and sold from there. Some of it is corned and smoked.

The tax is assessed by the Comptroller on the theory that the

PEOPLE ex rel. SCHWARZSCHILD CO. v. ROBERTS. 451

App. Div.]         Third Department, December Term, 1896.

relator is not wholly engaged in manufacturing in this State, and is, therefore, taxable on the amount of its capital stock employed within this State.

Assuming, as claimed by the relator, that it is a manufacturing corporation within the meaning of the statute (*Engle* v. *Sohn*, 41 Ohio St. 691), the question remains whether it is wholly engaged in carrying on manufacture within this State. (*People ex rel. Blackinton Co.* v. *Roberts*, 4 App. Div. 389.) A part of its business here is selling to a large amount the product of its Kansas plant, prepared there practically ready for the market. The fact that it is stored here in a refrigerator for a few days is not sufficient to authorize the relator to say that as to that article it is engaged here in manufacturing. With this element in the case, the relator fails, I think, to show that it is entitled to exemption as being wholly engaged in manufacture within this State.

Nor do I think that the relator is exempt upon that portion of its capital which is here engaged in manufacturing within the rule laid down in *People ex rel. Tiffany & Co.* v. *Campbell* (144 N. Y. 166). There the tax was on transactions outside of the authority given by the charter of the corporation, it being in substance held that, as to its legitimate corporate business, it was wholly engaged in carrying on manufacture within this State, and that the capital so employed was, therefore, not taxable. Here the Kansas transactions and the sale here of the Kansas goods were within the corporate power. The rule laid down in *People ex rel. Western Electric Co.* v. *Campbell* (80 Hun, 466; affd., 145 N. Y. 587) applies here and justifies taxation upon the amount of capital employed here.

The relator further claims that in any event the tax is too large. The tax imposed is upon a valuation of $1,210,000. There is evidence that the capital stock employed in this State is $1,614,883.50. Dividends are being paid at the rate of four per cent. The officers of the relator appraised the value of the entire stock at $1,312,394.07, and the claim is, that as only about one-third of the stock was employed in this State, the valuation should be reduced to that proportion of the appraised value. The Comptroller, however, was not bound by the appraisal of the relator. (*People ex rel. Am. Axe & Tool Co.* v. *Roberts*, 82 Hun, 313.) The evidence is, I think, sufficient to sustain the valuation as fixed by the Comptroller.

It follows that the determination of the Comptroller should be confirmed.

All concurred.

Determination of the Comptroller confirmed, with fifty dollars costs and disbursements.