(85 South. 598)

No. 23824.

BALLARD, Ex Officio Tax Collector, v. KENTWOOD ICE MFG. & BOTTLING WORKS, Limited.

(June 12, 1920.)

*(Syllabus by Editorial Staff.)*

Licenses ☞19(4)—Company a "manufacturer" exempt from license tax.

Company which made and sold ice, meal, ice cream, soda water, and pop, and converted hogs into pork products, *held* a manufacturer of all such products or articles, exempt from payment of a license tax for making and selling same at retail under Const. art. 229, milk cans sold by it being few, and sales mere incidents of business.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Manufacturer.]

Appeal from First Justice's Court, Parish of Tangipahoa; C. D. Strickland, Justice of the Peace.

Suit by John A. Ballard, ex officio Tax Collector of the Parish of Tangipahoa, against the Kentwood Ice Manufacturing & Bottling Works, Limited. From judgment for defendant, plaintiff appeals. Affirmed.

Clay Elliott, of Amite, for appellant.

R., C. & S. Reid, of Amite, for appellee.

SOMMERVILLE, J. The state sued for a license in the sum of $30, alleged to be due by defendant for carrying on the business of a retail merchant, selling ice, meal, lard, butter, bacon, hams, meat, ice cream, milk cans, and other articles during the year 1919.

The defendant answered that it was a manufacturer of the several articles named, except milk cans, and that it was exempt from the payment of license taxes under article 229 of the Constitution.

There was judgment in favor of defendant, and plaintiff has appealed.

The case was tried on a statement of facts sworn to by the president of the defendant company to the following effect:

"That the ice that the Kentwood Manufacturing & Bottling Works, Limited, sells is the ice which it manufactures; that he buys corn, which he grinds into meal, and sells the meal; that he buys hogs, manufactures them into lard, ham and bacon, and pickled meats, and sells same; that he buys milk and makes ice cream, and sells same; he buys cream and makes butter, and sells the butter; he makes and sells pop; that defendant furnishes to its customers occasionally old and new milk cans and charges for same; the witness estimates the gross sales of the company at between $30,000 and $35,000; * * * I am president and general manager of the defendant company; that the following processes are necessary in the manufacture of ice:

"Power engines, compresses, reboiler, condenser, for both water and ammonia, steel ice tanks, ice cans, pumps, ammonia coils, and innumerable other equipments and devices for handling same.

"Water is first pumped from the wells to the boiler and made into steam. This steam, after working the engines, is condensed back into water, then reboiled to eliminate the air, then cooled and filtered, then placed into a tank where it is brought down to a lower degree of temperature, then drawn off into ice cans which are placed in the freezing tanks. This freezing tank contains brine which is brought down to a temperature of 12 to 16 degrees Fahrenheit by the expansion of ammonia passing through the coils of pipes in the tank which causes the brine to freeze the water placed in the ice cans. These cans, containing 300 pounds of water, are required to remain in the

tank 48 hours before becoming a solid block of ice in the tank. This plant is a 25-ton ice plant, and cost $25,000 or $30,000.

"Meal is made from corn ground in a gristmill and bolted.

"Lard is made by cooking the fat of hogs. The grease is then clarified and strained.

"Butter is the manufactured product of cream, consisting of butter fat obtained from cream, 84 per cent. butter fat, 16 per cent. moisture, and salt.

"Ham, bacon, and meat are the products of the hog, prepared by packing and smoking.

"Ice cream is the finished product of milk with added fruits or flavors; said mixture containing 10 per cent. butter fat and frozen.

"Soda water and pop are carbonated water flavored with fruits and other flavoring, sweetened with sugar.

"The power which operates the ice plant operates the other plants. The machinery and equipment used in all the other plants, ice plant excepted amounts to about $25,000.

"Defendant owns and operates no establishment outside of its factory, and does not sell for consumption on the premises. Defendant employs on the plant 16 or 20 men."

In the case No. 23,823, John A. Ballard, Tax Collector, v. Hammond Coca-Cola Bottling Co., Ltd., 85 South. 597,[1] which was to-day decided, it was held that bottled soda water and coca-cola were manufactured articles, and therefore exempt from license taxation.

It will be unnecessary to repeat here the definition therein given, and copied from a former opinion of the court, of a manufacturer. According to evidence herein, ice is surely a manufactured article; and the manufacturer thereof is exempt from license taxation.

A miller grinding corn and making it into meal is also a manufacturer, and exempt under the decision of this court in the case of City of New Orleans v. Ernst, a rice miller, 35 La. Ann. 746.

The method of converting hogs into lard, ham, bacon, and salted meat by packing and smoking, as described by defendant, makes

[1] Ante, p. 580.

defendant a manufacturer thereof. It gives to the hog new qualities and new combinations after going through some artificial processes.

Ice cream, manufactured on the scale as the evidence shows defendant to manufacture same, has been decided to be a manufactured article. In re Brown, 140 La. 928, 74 South. 253.

Soda water and pop, when manufactured on the same large scale as before indicated, has been this day decided, when in the forms of bottled soda water and coca-cola, to be manufactured articles. See, also, State v. Tichenor, 118 La. 685, 43 South. 277.

The evidence shows defendant to be a manufacturer of all the articles mentioned in plaintiff's rule; and it is therefore exempt from the payment of a license tax for making and selling same at retail.

The milk cans sold by defendant were few in number, and were sold only to customers to deliver milk in to defendant. Such sales were mere incidents of the business; and defendant cannot be held to have been engaged in retailing milk cans.

The judgment appealed from is affirmed.