35 So.2d 422

## STATE v. MAGNOLIA PACKING CO.

### No. 38546.

April 26, 1948.

Irion & Switzer, of Shreveport, John B. Smullin, Eugene A. Conway and Stephen B, Rodi, all of Baton Rouge, for plaintiff and appellant.

Tucker, Bronson & Martin, of Shreveport, for defendant and appellee, Magnolia Packing Co.

McCALEB, Justice.

The State claims that the defendant is a wholesale dealer as defined by the General License Tax Law, Act No. 15 of the Third

Extra Session of 1934, as amended, and seeks recovery of taxes for the years 1944, 1945 and 1946. Defendant resists liability on the ground that it is engaged in the business of manufacturing and, therefore, is exempt from the provisions of the law. This defense prevailed in the lower court and the State has appealed.

The defendant operates a large meat packing plant in the city of Shreveport, distributing its products over a wide area of East Texas, South Arkansas and North Louisiana. In pursuance of this business, it buys cattle and hogs on the hoof and slaughters, cleans and dissects them. Part of the meat produced by this operation is sold at wholesale and the balance is processed into lard, beef and pork sausage, cured ham and other cured products, bacon, hides and other by-products.

The State concedes that the part of defendant's business devoted to making sausage and lard, comprising 35% of its gross receipts, constitutes manufacturing and has excluded from its claim the wholesalers tax on the sales of these products. However, it is contended that defendant is engaged in two other classes of business of a non-manufacturing nature,—the sale of fresh meat (comprising 35% of its gross receipts) and the sale of cured and smoked meats including hams, bacons and loins (comprising 30% of its gross receipts)— which are taxable under the provisions of paragraph (b) of Section 3 of the statute.

Defendant, on the other hand, denies that any part of its gross receipts are derived from pursuits of a non-manufacturing character. It further maintains that the operation of its meat packing house involves a series of steps by which live animals are converted into various cuts and qualities of edible products and that, in considering whether the business conducted by it is manufacturing, it must be viewed as a whole as it cannot be classified separately without destroying the fundamental integrated purpose for which it is organized. In short, it proclaims that it is either a manufacturer or not and that its operations cannot be separated for the purpose of exacting a license tax.

Since it is admitted that a substantial part of defendant's business involves manufacturing, we believe that it is exempt from payment of a license tax even though it be assumed, for purposes of discussion (an assumption most favorable to the State), that the conversion of live cattle and hogs into fresh meat and cured hams, etc., for sale as a separate enterprise would not be deemed a manufacture.

Ever since 1879, it has been the public policy of this State to exempt manufacturers from payment of occupational license taxes. This exemption was contained in Article 206 of the Constitution of 1879 and was repeated in Article 229 of the Constitutions of 1898 and 1913. Many perplexing problems, however, have been

encountered by the courts in the application of the constitutional exemption—for, manufacturing is a term of such broad import that it is sometimes difficult to determine whether a particular enterprise falls within its meaning. Thus, in 1880, a confectioner who peddled ice cream was held not to be a manufacturer (see New Orleans v. Mannessier, 32 La.Ann. 1075), whereas, in 1917 one who made ice cream on an enlarged scale was declared to be exempt (see State v. Brown, 140 La. 928, 74 So. 253). In truth, cases are legion on the subject; the opinions long and the results not entirely uniform.[1]

The exemption in favor of manufacturers was not carried in the Constitution of 1921. Nonetheless, in all license statutes enacted since that constitution has been in effect, the Legislature has specifically provided that manufacturers "shall be exempted from any provisions of this act." Accordingly, it is apparent that the lawmakers believe that the interest of the people is best served by continuance of the policy of exemption as an encouragement to the establishment of manufacturing enterprises.

The question arises, therefore, as to whether the Legislature intended to exempt those who, in connection with a manufacturing enterprise, engage in pursuits of a non-manufacturing nature. Section 3 of Act No. 15 of the Third Extra Session of 1934, as amended by Section 2 of Act No. 175 of 1944, declares:

"(b) Except as otherwise expressly provided herein, any person, firm, corporation

[1] In City of New Orleans v. Ernst & Co., 1883, 35 La.Ann. 746, a manufacturer was defined to be "one who is engaged in the business of working raw materials into wares suitable for use, who gives new shapes, new qualities, new combinations to matter which has already gone through some artificial process. A manufacturer prepares the original substance for use in different forms. He makes to sell, and stands between the original producer and the dealer, or first consumer, depending for his profit on the labor which he bestows on the raw material. City of New Orleans v. LeBlanc, 34 La. Ann. 596, 597."

The following businesses have been declared to be manufacturing: Barrel-maker-City of New Orleans v. LeBlanc, 34 La.Ann. 596; Rice milling-City of New Orleans v. Ernst & Co., supra; Converting saw logs into rough lumber-State v. A. Wilbert's Sons, 51 La.Ann. 1223, 26 So. 106; Newspaper publisher-State v. Dupre and Hearsay, 42 La.Ann. 561, 7 So. 727; Baker-State v. Lanasa, 151 La. 706, 92 So. 306; Sugar refining-State v. American Suger Refining Co., 108 La. 603, 32 So. 965; Making telephone poles-State v. American Creosote Works, Inc., 163 La. 547, 112 So. 412; Making bags out of burlap-State v. Bemis Bro. Bag Co., 135 La. 397, 65 So. 554; Converting hogs into lard, ham, bacon and salt meat by packing and smoking-Ballard v. Kentwood Ice Mfg. Co., 147 La. 583, 85 So. 598. Contra, but without citation or discussion of the Ballard case, is State v. Gardner & Jacob Co., 176 La. 221, 145 So. 521; Bottling soft drinks-Ballard v. Hammond Coca-Cola Bottling Co., Ltd., 147 La. 580, 85 So. 597; Machine shop-State v. Transmission Machinery Co., 157 La. 827, 103 So. 180; Extracting oil from cotton seed-State v. Southern Cotton Oil Co., 164 La. 225, 113 So. 825.

or association of persons taxed under this Act having one or more places of business shall pay a separate license for each class of business at each place."

Counsel for the State say that, since 65% (30% for cured meat and 35% for fresh meat) of defendant's gross receipts are derived from pursuits which are allegedly non-manufacturing, the above quoted section applies and defendant is liable for the tax on these two classes of business.

The argument is not tenable. Paragraph (b) of Section 3 of the Act applies only to persons "taxed under this Act". If a meat packing plant be regarded as an integrated manufactory, then it matters not whether a part of its gross receipts is obtained from operations which would not be considered as manufacturing when conducted as a separate enterprise.

Section 8 of Act No. 175 of 1944, in exempting manufacturers from "any of the provisions" of the statute, does not make it essential that all of the gross receipts of a business be derived from manufacturing in order for one to be a manufacturer. In this respect, it differs from certain other statutes on taxation exempting corporations "wholly engaged in carrying on manufactures within the state" (see People ex rel. Schwarzschild & Sulzberger Co. v. Roberts, 11 App.Div. 449, 42 N.Y.S. 317, 318, affirmed in 156 N.Y. 690, 50 N.E. 1121), or the corporate stock of corporations organized for "purely manufacturing purposes". See Distilling & Cattle Feeding Co. v. People, 161 Ill., 101, 43 N.E. 779, 780.

Albeit, the exemption contained in our act is more on a parity with the provisions of a Massachusetts statute exempting from taxation machinery of a foreign manufacturing corporation which the Supreme Judicial Court of that state was but recently called upon to construe in Commissioner of Corporations and Taxation v. Assessors, etc., 1947, 321 Mass. 90, 71 N.E.2d 874, 876. There, the question arose as to whether the exemption covered the business of Armour & Company which maintained three plants in Boston; "one plant where shipments of carcasses sent by the corporation were received and cut up for dealers, hotels and restaurants, and where sausages were made, lard produced, and bacon and hams prepared; the second plant where operations similar to those conducted at the first plant were conducted with the exception of producing lard; and the third plant where leather soles were cut from hides graded and shipped to shoe manufacturers." In concluding that Armour & Company was a foreign manufacturing corporation within the meaning of the statute, even though it was not wholly engaged in manufacturing, the court said:

"Corporations whose manufacturing operations are substantial, whether viewed with respect to the financial receipts they bring to the corporation, or the proportion of the

entire corporate income that they comprise, or the percentage of the entire capital which is invested in them, or the number of persons employed in them as compared with the total number of employees of the corporations, or the ratio to the entire business activities of the corporation, must be regarded as manufacturing corporations within our statutory definitions specifying those that are exempted from local taxation of their machinery."

In the case at bar, the operations of the defendant, which are admittedly manufacturing, are most substantial, i.e., 35% of its gross receipts. In truth, its entire operations are so interwoven with manufacturing that it would be indeed difficult to say that any part thereof can be rightfully separated from the whole. The slaughter of cattle and hogs is just as essential to the production of sausages as it is to the sale of cut meat and cured hams. Accordingly, in the absence of restricted wording in the exemption, such as that contained in the New York and Illinois statutes above referred to, defendant is to be regarded as a manufacturer and therefore not amenable to the provisions of paragraph (b) of Section 3 of Act. No. 15 of the Third Extra Session of 1934, as amended.

The judgment appealed from is affirmed.

O'NIELL, C. J., does not take part.