OKLAHOMA INDUSTRIAL FINANCE AUTHORITY — OIL FIELD PIPE SUPPLY COMPANY AS INDUSTRIAL OR MANUFACTURING ENTERPRISE — "INDUSTRIAL DEVELOPMENT PROJECT" DEFINED An oil field pipe supply company which modifies a portion of its stock by cutting, beveling, threading, polishing and installing couplings and collars on pipe in order to sell same does qualify as an industrial or manufacturing enterprise within the definition of "industrial development project" as defined in 74 O.S. 853 [74-853](F) (1971). The Attorney General has received your request for an opinion wherein you ask, in effect, the following question: Does an oil field pipe supply company which modifies a portion of its stock by cutting, beveling, threading, polishing and installing couplings and collars on pipe in order to sell same qualify as an industrial or manufacturing enterprise within the definition of "industrial development project" as defined in 74 O.S. 853 [74-853](F) (1971)? Title 74 O.S. 855 [74-855] (1971), states the powers of the Oklahoma Industrial Finance Authority and provides in subsection (b) that the Authority shall have the power: "To determine upon proper application of industrial development agencies, whether the declared public purpose of this Act has been or will be accomplished by the establishment of such industrial development projects by such industrial development agencies." The purpose of the Act (74 O.S. 851 [74-851] through 74 O.S. 878 [74-878] (1971)) is specifically set out in 74 O.S. 852 [74-852], which states: "It is hereby declared to be the purpose of this Act to vitalize the constitutional amendment identified as House Joint Resolution No. 513 of the Twenty-seventh Oklahoma Legislature, if, as and when the same shall be approved by the people, to aid and assist with Oklahoma's industrial development and provide additional employment and payrolls within this State." In determining whether this public purpose is being met, the Authority must first decide if the project contemplated by the industrial development agency in its application falls within the statutory definition of industrial development project. Title 74 O.S. 853 [74-853](F) (1971), provides: "The term 'industrial development project' shall mean any site, structure, facility or undertaking comprising or being connected with or being a part of any industrial or manufacturing enterprise established or to be established by an industrial development agency in Oklahoma." The term "industrial or manufacturing enterprise" as used in 74 O.S. 853 [74-853](F) has been interpreted by the Attorney General in several prior opinions. In Opinion No. 63-448 the Attorney General made the following observations: "The words 'Industrial and Manufacturing Enterprises' are susceptible of a great variety of meanings, depending upon whether they are used in connection with zoning ordinances, taxation or regulations. The term industrial is very broad in its meaning, and was defined by the Oklahoma Supreme Court in the case of Chicago, R.I. P.R. Co. vs. State, et al., 83 Okl. 161, 201 P. 260: "'Any department or branch of art, occupation, or business; especially one which employs much labor and capital and is a distinct branch of trade * * *' "In the case of Wayland v. Kleck, 57 Ariz. 135, 112 P.2d 207, the court said: "'Many activities connected with the preparation of farm products for use or sale which formerly were carried on upon the farm or in intimate connection with it, such as the making of butter, cheese and cider have gradually become specialized and removed from the farm, and when this is done such work may properly be regarded as thereby becoming "industrial" in nature rather than "agriculture" in the common conception of that term.' "In the case of Cain's Coffee Co. v. City of Muskogee, 171 Okl. 635,44 P.2d 50, the Oklahoma Supreme Court quoted from Dolese and Shepard Co. vs. O'Connell, 257 Ill. 43, 100 N.E. 235, where the court used the following language: "'As used in the statute, the word "manufacture" is not to be given its technical meaning. The Century Dictionary defines it as "the production of articles for use from raw or prepared materials by giving these materials new forms, qualities, properties, or combinations, whether by hand labor or machine." "'Whenever labor is bestowed upon an article which results in its assuming a new form, possessing new qualities or new combinations, the process of manufacturing has taken place, whether the thing produced be a small article of commerce or a structure, such as a house, road, or bridge.' "In the case of City of Louisville v. J. Einmeister and Sons, 188 Ky. 570,222 S.W. 958, the court said: "'Whether such an establishment is a manufacturing plant does not depend upon the size of the plant, the number of men employed, the nature of the business, or the article to be manufactured, but upon all these together and the result accomplished.' "In the case of Dairy Queen of Oklahoma, Inc., vs. Oklahoma Tax Commission, 205 Okl. 473, 238 P.2d 800, the Oklahoma Supreme Court quoted with approval the following definition found in 55 C.J.S., p. 672 lb: "'The word "manufacturer" is defined in broad terms as meaning "one who processes raw material; one engaged in making materials, raw or partly finished, into wares suitable for use." The authority further states that all persons manufacturing articles are not to be classed as manufacturers, but rather only those who manufacture articles of trade as the principal part of their business.' "In the case of Commonwealth vs. Thackera Manufacturing Co., 27 A. 13, 156 Pa. 510, the court held: "'The charter of a corporation, granting power to "manufacture", implies a power to sell the article thus produced, but not the power to both buy and sell — to buy goods in order to sell them afterwards — and to do this habitually and as a business, thus becoming a merchant or dealer, is not a necessary incident to the business of manufacturing. Manufacturers constitute a separate class from merchants or dealers.' "Thus, we can see from the above holdings in various cases the word 'industry' can include almost any kind of an enterprise. The term 'manufacturing' can include almost any type of plant so long as a raw material is converted by means of labor and machinery into a product suitable for use in a different form. Thus, a milk company merely pasteurizing milk and reselling it was held not to be a manufacturer. 156 Va. 63,157 S.E. 728. A meat packer can be both a manufacturer and a dealer, a manufacturer in the curing of hams and bacon and the making of lard and sausage, but a mere dealer and processor in the sale of fresh meat. 213 La. 661,35 So.2d 422. A manufacturing or industrial concern could be of any size and still come within the general meaning of the two terms." In Attorney General Opinion No. 67-400, the Attorney General distinguished commerce and industry in stating: "Commerce is defined generally in 15 C.J.S. Commerce 371, as follows: "'As meaning business intercourse, especially the exchange or buying and selling of commodities, and particularly the exchange of merchandise on a large scale between different places or communities; extended trade or traffic; the exchange of goods, products, or property of any kind * * *.' "Manufacturing or production, on the other hand, is distinguished from commerce, "'in that commerce succeeds production and it is not a part of it and in that production or manufacture is a transformation of raw materials into a change of form for use, while the functions of commerce consist in the purchasing, selling and exchanging of commodities and the transportation incidental thereto.' 15 C.J.S. Commerce 1, P. 386. "In the case of Seltenreich v. Town of Fairbanks,103 F. Supp. 319 we find the following definition: "'Industry" is defined as follows: "The result of operations whereby man changes and makes fit for his use materials which were unserviceable in their natural state." ' 43 C.J.S. Industry, page 40, note 6." It is apparent from the facts you relate that the process of cutting, beveling, threading, polishing and installing of couplings and collars on pipe contains the attributes of a manufacturing process. While it is questionable that such modifications constitute "manufacturing", it is clear that such modification process would fall within the definition of "industry", the word "industry" being broader in scope than the word "manufacturing". The Industrial Finance Authority is given the discretion to pass upon the various projects submitted to it with the public purpose to be accomplished in mind, that is "to aid and assist with Oklahoma's industrial development and provide additional employment and payrolls within this State". Being qualified as an industrial or manufacturing enterprise partially meets the public purpose of the Act. The Authority should exercise its discretion in the granting of loans for industrial and manufacturing enterprises and accept for loans only such projects that also provide additional employment and payrolls within the State. It is, therefore, the opinion of the Attorney General that your question be answered as follows: An oil field pipe supply company which modifies a portion of its stock by cutting, beveling, threading, polishing and installing couplings and collars on pipe in order to sell same does qualify as an industrial or manufacturing enterprise within the definition of "industrial development project" as defined in 74 O.S. 853 [74-853](F) (1971). (MIKE D. MARTIN) (ksg)